GRIFFIN, J.
Petitioners, Department of Children and Families [“DCF”] and J.A., the father, seek certiorari review of the trial court’s order on the October 1 and 5, 2012 Keeping Children Safe Act[1] [“KCSA”] hearing *1125 that granted the maternal grandfather access to the child, K.A. DCF is correct that the statutory procedure was not followed. Accordingly, we grant the petition, quash the order of the trial court, and remand for a new hearing.
In July 2012, the child was removed from her mother and placed in protective custody. It was alleged that the mother and her paramour used drugs in front of the child. The paramour died in front of the child from a drug overdose. At the shelter hearing, the child was placed with a maternal aunt, and the mother was granted supervised visitation. The father was granted unsupervised visits, and the maternal grandfather was granted supervised visits over DCF’s objection. D.K., the maternal grandfather’s long-term companion, was allowed to supervise the mother’s visitation.
At the August 20, 2012, disposition hearing, D.K. requested a homestudy and custody of the child. DCF advised that a homestudy would be denied because of the maternal grandfather’s prior child abuse registry history. The comprehensive behavioral health assessment [“CBHA”] filed with the court noted that, one year earlier, there was a verified finding of sexual abuse of the child by the maternal grandfather.
At a September 10, 2012 status hearing, DCF advised that the grandfather’s record reflected a criminal charge that subjected him to the KCSA even though the charge *1126 was subsequently dismissed. In the announcement of no information, the state attorney had explained:
The evidence available is insufficient to convince a jury beyond a reasonable doubt. Because of the child’s young age she is not likely to be considered a competent witness. Further the defendant denies any improper conduct and persons who were reported to have potential William’s Rule evidence deny any misconduct by the defendant. A conviction is not reasonably likely and thus the case must be declined....
Shortly thereafter, the aunt reported that she could no longer care for the child. On September 21, 2012, an emergency motion to modify placement from the aunt to foster care was filed and a hearing was held the same day. The court ordered a non-relative placement with D.K. The court ordered the grandfather to leave the residence until a KCSA hearing could be held. DCF and the Guardian Ad Litem [“GAL”] objected to the placement because there was not an approved home-study. The grandfather was permitted to have supervised visitation.
A KCSA hearing was held October 1 and 5, 2012. The court noted that “a rebuttable presumption of detriment to a child is created when ... a court of competent jurisdiction has found probable cause exists that a parent or caregiver has sexually abused a child as defined in 39.01.” The court correctly explained that in a KCSA hearing pursuant to section 39.0139, Florida Statutes, a person seeking contact must present clear and convincing evidence that the safety, wellbeing, physical, mental, or emotional health of the child is not endangered.
The hearing began with DCF calling the child protective investigator [“CPI”], who investigated the allegations of sexual abuse by the grandfather. The CPI testified that the child disclosed that the grandfather touched her vaginal area. The child was taken for a Child Protection Team [“CPT”] interview and medical exam, at which the child disclosed that the grandfather stuck his penis in her mouth. DCF also called a member of the CPT to testify. The CPT member verified that the child indicated on an anatomical drawing that her grandfather put his penis in her mouth. The CPT member also determined that the child had information that a four-year-old child would not typically have. The child also informed the CPT member that her grandfather kissed her privates. The CPT made verified findings of abuse.
Detective Chris Ball testified that the foregoing was part of what he used to make his determination that probable cause existed to arrest the grandfather. In addition to that information, the child informed him that she was no longer allowed to see her grandfather because he touched her privates. When interviewed, the grandfather denied the allegations, but the detective concluded that he displayed “obvious signs of deception through all the interviews.” The detective also testified that the mother informed him that she had heard that the grandfather also inappropriately touched the mother’s sister and step-brother. The detective testified that he spoke with the maternal grandmother who informed the detective that she witnessed the grandfather kissing the breasts of her daughter who was seven years old at the time. The mother’s sister told the detective that she did not remember the alleged incident.
During the KCSA hearing, the mother’s attorney informed the court that the mother and grandfather wished to testify to rebut the presumption, and the hearing was continued. At the October 5, 2012, hearing, the court indicated that it would *1127 watch the DVDs of the CPT interviews first. After doing so, the court announced that it did not need to hear anything else, found no probable cause, and advised the grandfather that he could return home.
On October 30, 2012, DCF moved to stay the trial court’s order so it could appeal as soon as the order was rendered. The trial court held a hearing and denied the emergency notice of stay. At the hearing, the court said:
[ A]ll you got to do is look at the tapes and I think I kind of, even though you mentioned in your motion, Ms. Antrim, that there was probable cause found in 2011-CF-1363, I was the judge that did that and all we have to do is find probable cause for the detainment.
That was undisputed, unchallenged statements by a law enforcement officer. Based upon that, and that alone, that’s— we have a finding of probable cause for detainment. Whether or not there’s probable cause for the prosecutor to file charges is a different story.
[[Image here]]
And I can tell you and I’m looking at my notes, the child in an initial — which I felt was kind of coached, but — he touched and — he kissed and touched my vagina. One time she said she had no clothes on, another time she says, “Yeah, I had clothes on.” And then she says, “Only dad can touch the private parts. No one else does, no one else does.” And then she says, to even clarify with dad, “Dad touched with a car on her private area. Nobody else touches but daddy.” Okay, so—
[[Image here]]
And I’m supposed to find probable cause based upon that and I, and I do not.
[[Image here]]
MS. ANTRIM: You did the first appearance.
THE COURT: Okay. Now, and after listening, you know, probable cause is challenged in that case. So whenever you’re looking at a cold, hard piece of paper, you take for granted everything that’s said and you say: Based upon what I’m reading here, probable cause exists. Just upon that, yes.
Now, that’s what creates the rebuttable, you know, that you get an opportunity for the other party to say something, when you don’t in a probable cause first appearance hearing, which is a lot different. There was not a probable cause, criminal probable cause hearing.
So after hearing that, the evidence, and that evidence was presented through testimony and also that of me actually seeing what the child actually said, I found that there was not probable cause to believe the child was at risk or that Mr. Flanagan [maternal grandfather] had ever abused that child.
[[Image here]]
Okay. Now, according to — we’ll just go through it then 39.0139. A rebuttable presumption of detriment to a child is created when a court of competent jurisdiction has found probable cause exists that a parent or caretaker has sexually abused a child.
Now I don’t know if they’re talking about this — the probable cause you find at first appearance, because there are probable cause hearings. But basically that’s what we were doing is there was a — probable cause had been raised because there was probable cause for a detainment in the setting of bond; which is certainly different than a probable cause hearing you would have in a criminal case.
But going further. So that was the one in which we were going forward on. And so you skip down to number four, person who meets the criteria, which *1128 we’ll go with the finding of probable cause by myself at a first appearance determination for bond.
It says they shall have a right to an evidentiary hearing to determine whether the contact is appropriate. A Guardian Ad Litem was appointed pursuant to A. B, at the hearing I received and relied upon the evidence of testimony of witnesses and most importantly the actual entry into evidence of the two DVDs in which the child was being interviewed.
Also judicial notice of the criminal court file was taken and those documents contained were in — within were considered. I find that by clear and convincing evidence that the safety, wellbeing and physical, mental, and emotional health of the child is not endangered by contact with Mr. Flanagan....
[[Image here]]
And I be — and it is my finding that that allegation was rebutted by the evidence received in court. I ordered that Mr. Flanagan could return to his home. And have you returned home, sir?
[[Image here]]
MS. ANTRIM: And, Your Honor, you stated particularly the DVDs. So are you discounting the testimony that was provided by—
THE COURT: No. I said I, I, I considered the testimony of the witnesses, I’ve considered the file, both the criminal file and the juvenile dependency file — or, excuse me, juvenile, yeah, dependency file, and the DVDs.
And after having considered, I find by clear and convincing evidence that the welfare of the child is not threatened by contact with her grandfather.
On November 5, 2012, the court entered a written order on the October 1 and 5, 2012, KCSA hearing and motion for stay. The court denied the motion for stay. The court acknowledged that, in December 2011, the grandfather was arrested and charged with two counts of sexual battery on a child under the age of 12 and was in custody for a month. The court then found:
Upon personally reviewing the evidence of the child’s statements that lead to the necessity of a KCSA hearing, this Court finds no probable cause that Mr. Flanagan has sexually abused the child. The child’s statements were inconsistent and unreliable. There was no evidence that the child will be endangered by her grandfather.
On appeal, DCF contends that the trial court departed from the essential requirements of law in two respects: 1) the trial court incorrectly interpreted the probable cause determination that triggers the re-buttable presumption of detriment to the child pursuant to section 39.0139(3)(a)l., Florida Statutes; and 2) the grandfather did not meet his burden to rebut the presumption or to support the court’s findings and grant of custody.
The KCSA statute is relatively new. There is little case law discussing the statute, and no cases that discuss the statute in terms of probable cause. The legislature amended the statute, effective July 2011, to read “A rebuttable presumption of detriment to a child is created when: 1. A court of competent jurisdiction has found probable cause exists that a parent or caregiver has sexually abused a child as defined in s. 39.01.” See § 39.0139(3)(a)l., Fla. Stat. (2011). The KCSA does not define probable cause. The trial court suggests it only means “probable cause” found after an evidentiary hearing, but chapter 39 suggests otherwise. See §§ 39.401(1), § 39.402(1), 39.402(8)(d), Fla. Stat. (2011).
The Florida Rules of Juvenile Procedure state that, in the context of a shel *1129 ter hearing, “the issue of probable cause shall be determined in a nonadversarial manner, applying the standard of proof necessary for an arrest warrant.” Fla. R. Juv. P. 8.305(b)(3). “In making a probable cause finding to support an arrest warrant, a judge considers a sworn affidavit prepared by a law enforcement officer.” Perry v. State, 842 So.2d 301, 303 (Fla. 5th DCA 2003).
Nor does the KCSA authorize a court to revisit a probable cause determination that has been made. It is not the responsibility of a court in a KCSA hearing to re-determine whether there was probable cause; rather, the responsibility of the court is to determine whether a court of competent jurisdiction has found probable cause, and then to allow the caregiver to present clear and convincing evidence to rebut the statutory presumption that flows from the probable cause determination.
What is worrying about this case from the perspective of the reviewing court is that the trial court concluded that it was enough to listen to and evaluate the statements made in the CPT interview. Once an investigation has generated a finding of probable cause to believe the child has been a victim of abuse, the mandate of the statute is to keep the child from exposure to the probable abuser until there is clear proof that the child will be safe. The KCSA is not concerned with whether a conviction can be obtained, it is concerned with the child’s safety. These are often cases where the young victims are unable to comprehend the crimes against them. They are often legally incapable of testifying or unable to relate facts as an adult could do. It makes sense that the Legislature has shifted the burden to the person seeking access.
On the face of it, these sexually explicit allegations were not the fanciful prattles of a toddler. The child, who the record suggests had been diagnosed with ADHD, may not have been the most articulate witness at age four, but her description of sexual activity warrants examination. The child is now a year older and may be a better witness to what did or did not happen to her. There was evidence that the grandfather had done this kind of thing before to another child. There was testimony that the child made reports of her abuse other than during the CPT interview. The assigned investigator testified that he interviewed the grandfather and did not believe his denials. The objective of the hearing was for the grandfather to prove clearly and convincingly that he was not a threat to the child. Why a court with this statutory mandate would not expect to hear this man testify, explore all the available facts and listen to any available witness is a mystery. We grant the petition, quash the order of the trial court, and remand for a new KCSA hearing that meets the requirements of section 39.0139, Florida Statutes.
Petition GRANTED; Order QUASHED and REMANDED.
PALMER and COHEN, JJ„ concur.

. The pertinent portions of the KCSA, § 39.0139, Florida Statutes (2011), are as follows:
(3) Presumption of detriment.—
(a) A rebuttable presumption of detriment to a child is created when:
1. A court of competent jurisdiction has found probable cause exists that a parent or caregiver has sexually abused a child as defined in s. 39.01;
2. A parent or caregiver has been found guilty of, regardless of adjudication, or has entered a plea of guilty or nolo con-tendere to, charges under the following statutes or substantially similar statutes of other jurisdictions:
*1125 a. Section 787.04, relating to removing minors from the state or concealing minors contrary to court order;
b. Section 794.011, relating to sexual battery;
c. Section 798.02, relating to lewd and lascivious behavior;
d. Chapter 800, relating to lewdness and indecent exposure;
e. Section 826.04, relating to incest; or
f. Chapter 827, relating to the abuse of children; or
3. A court of competent jurisdiction has determined a parent or caregiver to be a sexual predator as defined in s. 775.21 or a parent or caregiver has received a substantially similar designation under laws of another jurisdiction.
(b) For purposes of this subsection, "substantially similar” has the same meaning as in s. 39.806(l)(d) 2.
(c) A person who meets any of the criteria set forth in paragraph (a) may not visit or have contact with a child without a hearing and order by the court.
(4) Hearings. — A person who meets any of the criteria set forth in paragraph (3)(a) who seeks to begin or resume contact with the child victim shall have the right to an evidentiary hearing to determine whether contact is appropriate.
(a)Prior to the hearing, the court shall appoint an attorney ad litem or a guardian ad litem for the child if one has not already been appointed. Any attorney ad litem or guardian ad litem appointed shall have special training in the dynamics of child sexual abuse.
(b) At the hearing, the court may receive and rely upon any relevant and material evidence submitted to the extent of its probative value, including written and oral reports or recommendations from the child protective team, the child’s therapist, the child's guardian ad litem, or the child's attorney ad litem, even if these reports, recommendations, and evidence may not be admissible under the rules of evidence.
(c) If the court finds the person proves by clear and convincing evidence that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by such visitation or other contact, the presumption in subsection (3) is rebutted and the court may allow visitation or other contact. The court shall enter a written order setting forth findings of fact and specifying any conditions it finds necessary to protect the child.
(d) If the court finds the person did not rebut the presumption established in subsection (3), the court shall enter a written order setting forth findings of fact and prohibiting or restricting visitation or other contact with the child.